IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID MILEHAM,<br><br>               Plaintiff,<br><br>v.<br><br>JEREMY CONLEY, *an individual,* and<br>NATHAN SWIERKOSZ, *an individual*, and<br>PAUL SMITH, *an individual*,<br><br>               Defendants. | Civil Action No. 2:20-cv-116<br><br>Hon. William S. Stickman IV |

### **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

     Plaintiff David Mileham ("Mileham") initially brought an action against Defendants Jeremy Conley ("Conley") and Nathan Swierkosz ("Swierkosz"), two Borough of Bridgewater police officers, for unlawful use of force in violation of the Fourth Amendment and state law causes of action. He later amended his complaint to assert a First Amendment Retaliation claim against Paul Smith ("Smith"), the chief of police for the Borough of Bridgewater. (ECF Nos. 1, 16, 27, and 37). Smith has moved for summary judgment. (ECF No. 86). For the following reasons, his motion will be granted.

               **I.**     **STANDARD OF REVIEW**

     Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, there is a genuine dispute of

material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## II. Factual Background

The facts relating to Mileham's claim against Smith are completely different than those undergirding his claims against Swierkosz and Conley. The only link between them is the alleged retaliation related to Mileham's initial lawsuit against Swierkosz and Conley.

Mileham's claim against Smith arises from an encounter that occurred on February 3, 2021, in the parking lot of Spanky D's Restaurant and Boat Yard ("Spanky D's"). (ECF No. 88, pp. 1-2); (ECF No. 101, pp. 1-2). It is undisputed that Smith pulled over a woman for speeding who happened to be Mileham's girlfriend, Melanie Budavich ("Budavich"). Smith alleges that Mileham approached him and was screaming about the Bridgewater police being corrupt and that they would sue them. Mileham denies this allegation. Rather, he says that he was peaceably smoking outside of Spanky D's with a man named Richie[1] and was telling Richie his belief that the police were corrupt. He says that he raised his voice so that Richie, who was walking across the parking lot, could hear him. It is undisputed that Smith asked Budavich who Mileham was and where he worked. She told Smith that Mileham was her boyfriend and had his own business. (ECF No. 88, pp. 2-3); (ECF No. 101, pp. 2-3, 10-11); (ECF No. 104, pp. 3, 5).

---

[1] Mileham claims not to know Richie's last name. He is referred to in the papers as "Richie LNU" (last name unknown). Mileham has not provided any further information about Richie, nor has he adduced any evidence from Richie about the incident outside of Spanky D's.

It is undisputed that after completing the traffic ticket for Budavich, Smith drove to the front of Spanky D's where Mileham was standing. Mileham videoed the encounter that followed. (ECF No. 88, p. 3); (ECF No. 101, pp. 3-4). That video, which was reviewed by the Court, shows that Mileham said the following to Smith:

> Go fuck yourself. . . Don't tase me. . . You guys got on my boat beat the fuck out of me . . . I can run my big mouth buddy. . . Look at right here's my girlfriend you guys definitely are out to get her aren't ya? Because of me? Because I got a lawsuit in this town? . . . Buddy I'm on private property I'll do whatever the fuck I want. It's called being an American. . . .Guess what buddy, you're a fucking scumbag. Okay, and we'll take care of this in Court, I guarantee that. Because I'm gonna . . . add on to the lawsuit.

(ECF No. 88, p. 3); (ECF No. 101, p. 4); (Smith's Exhibit "Ex." G)[2]. During this encounter, Smith told Mileham that he "needs to respect his elders." He called Mileham "sonny" multiple times and said Mileham was "running his big mouth" and "making a scene." (ECF No. 101, p. 11); (ECF No. 104, p. 5); (Smith's Ex. G). At one point, Smith asked Mileham if he wanted "to take a swing at him," and Mileham responded, "take a what?'" (*Id.*).

After the exchange, Smith charged Mileham with disorderly conduct in violation of 18 Pa. C.S.A. § 5503(a)(1)-(3). A summary trial was held before a Pennsylvania magisterial district judge in which Mileham, who was represented by counsel, was convicted. Mileham appealed the conviction *de novo* to the Court of Common Pleas of Beaver County, where he was acquitted after a summary trial. (ECF No. 88, pp. 3-4); (ECF No. 101, p. 4). This prosecution forms one basis for Mileham's retaliation claim.

The other basis for Mileham's claim stems from alleged interference in his business by Smith. Mileham contends that the alleged cancellation of a job caused him to lose substantial

---

[2] Smith's Appendix G, the video of the Spanky D's encounter, was submitted to the Court on a flash drive and the Court's receipt of it was docketed at ECF No. 92.

revenue. Mileham had been hired by a company, Global Heavy, to haul dirt from a water treatment plant to a dump site near Robert's Roadside Inn located in Bridgewater. Mileham alleges that during a 4:30 p.m. phone call on February 3, 2021, he was informed by an individual called "Bill,"[3] an employee of Global Heavy, that the job to run dirt to the dump site would not run the following day. Mileham admits that, by this date, the dump site was getting "full." ECF No. 88, pp. 4); (ECF No. 101, pp. 4); (ECF No. 104, p. 5).

The next day, February 4, 2021, Mileham called Bill to ask why the job was being "shut down," and he asked Bill to explain, by text, the reason the job was being halted. (ECF No. 88, p. 5); (ECF No. 101, p. 5). Mileham then received a text message from Bill stating, "I was told Rochester board member received a call from chief of police at bridge water [sic] who requested no more dumping at Sharon Road." (ECF No. 88-13). Mileham does not know the identity of the board member who allegedly spoke to Bill. Nor does he know if there was ever a written stop work order relating to the job. He never talked to anyone who claimed they talked to Smith about this job site, and Mileham never contacted the Borough of Bridgewater. (ECF No. 88, pp. 5-6); (ECF No. 101, pp. 5-6). Notably, Smith never contacted anyone from Global Heavy. (ECF No. 88, p. 7); (ECF No. 101, p. 7).

Smith adduced as Exhibit J the Declaration of Judith Bert ("Bert"), President of the Council of the Borough of Bridgewater.[4] (ECF No. 88-16). On January 28, 2021, she received a phone

---

[3] Smith's concise statement contains no last name for Bill. (ECF No. 88). In footnote seven of Smith's brief, he notes, [i]It is not clear if the spelling of Bill's last name is "Nealon," "Neilan," or "Neelan."" (ECF No. 87, p. 7, n.5). In Mileham's counterstatement of material facts, he posits that "Neilan," is Bill's last name. (ECF No. 101). The text message Mileham attributes to Bill has the initials, "BS." (ECF No. 88-13). Bill's last name remains unclear to the Court as no further information about (or from) Bill was adduced in discovery.

[4] The Bert declaration, which was executed on February 21, 2021, meets the requirements of Federal Rule of Civil Procedure 56 ("Rule 56"), and Mileham does not argue otherwise. Moreover,

4

call from Charles D. Bates, the Fire Chief of the Bridgewater Fire Department, asking if the borough was performing work on Sharon Road and he stated that there was mud on the road. Bert asked Smith to drive to Sharon Road to investigate the mud. Smith informed her that there was no one working when he drove by the area. Bert then personally observed the mud and/or dirt on Sharon Road. After that, Bert went to the Borough of Bridgewater municipal building and spoke with Vickie Adams who said that she had Smith call the Rochester Joint Sewer Authority about the mud and request that the vehicles transporting the mud and/or dirt clean their tires before entering Sharon Road. (ECF No. 88-16).

Smith adduced as Exhibit M the Declaration of Frank Dodson ("Dodson"), chair of the Rochester Borough Sewer Maintenance Authority, in Rochester, Pennsylvania.[5] (ECF No. 88-14). Dodson avers that on February 4, 2021, he received a phone call from Smith asking about dirt on Sharon Road and asking that the road be cleaned if the Rochester Borough Sewer Maintenance Authority was responsible for the dirt. Dodson further avers that Smith never referenced stopping work or issuing any work stoppage. After their conversation, Dodson contacted individuals from the Rochester Area Joint Sewer Authority regarding the cause of the dirt and/or mud on Sharon Road. (ECF No. 88, pp. 6-7); (ECF No. 101, p. 7).

John Kaercher, the superintendent for the Rochester Area Joint Sewer Authority, received a voicemail from Dodson asking if dirt was being hauled. Dodson did not mention Smith, and

---

Mileham had ample opportunity to conduct fact discovery, which did not close until December 21, 2022 (ECF No. 75), and apparently chose not to depose Bert. This is to say that Mileham has failed to counter with any record evidence the facts asserted by Bert in her declaration.

[5] The Dodson declaration, which was executed on February 22, 2021, meets the requirements of Rule 56, and Mileham does not argue otherwise. Moreover, Mileham had ample opportunity to conduct fact discovery, which did not close until December 21, 2022 (ECF No. 75), and apparently chose not to depose Dodson. This is to say that Mileham has failed to counter with any record evidence the facts asserted by Dodson in her declaration.

Kaercher never spoke with Smith. No one told Kaercher that there was a stop work order. (ECF No. 88, p. 7); (ECF No. 101, p. 7); (ECF No. 88-15). Furthermore, Bert specifically noted that, "the Council of the Borough of Bridgewater is not aware of any stop work order related to the project that was causing dirt to enter the roadway." (ECF No. 88-16).

### III.  ANALYSIS

Mileham alleges that his filing of the lawsuit against Conley and Swierkosz is the constitutionally protected action for which he was retaliated. (ECF No. 37, ¶70). He claims that Smith retaliated by subjecting him to a baseless criminal prosecution and by interfering with his business. Smith argues that summary judgment in his favor is warranted because Mileham cannot maintain his claim for First Amendment retaliation on the facts before the Court. Smith argues that Mileham can point to no evidence demonstrating a link between the lawsuit against Conley and Swierkosz, the prosecution for the incident outside of Spanky D's, and the supposed work stop order that impacted his hauling business. The Court agrees. Summary judgment will be entered in favor of Smith.

The First Amendment to the United States Constitution safeguards the right to free speech and the provisions of the First Amendment bind state actors by way of incorporation through the Due Process Clause of the Fourteenth Amendment. *See Locke v. Davey*, 540 U.S. 712, 718 (2004). The basic principles of First Amendment retaliation are well-established. "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (alteration in original). "[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3)

a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* (citing omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of [a constitutionally] protected right." (citation omitted)). The third element, "a causal link," requires "but-for" causation. *Mirabella*, 853 F.3d at 651. "In order to establish the required causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 133 (3d Cir. 2017) (citation omitted).

If a plaintiff satisfies the elements setting forth a First Amendment retaliation claim, the government may avoid liability if it can show by a preponderance of the evidence that it would have taken the adverse action "even in the absence of the protected conduct." *Watters v. City of Phila.*, 55 F.3d 886, 892 (3d Cir. 1995).

    A.    **Mileham's lawsuit was a protected activity under the First Amendment.**

Whether an activity is protected by the First Amendment is a question of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). It is well-established that "the First Amendment's Petition Clause protects individuals from retaliation for filing non-sham lawsuits, grievances, and other petitions directed at the government or its officials." *Hill v. Barnacle*, 509 F. Supp. 3d 380, 392 (W.D. Pa. 2020) (collecting cases). There is no question, then, that Mileham's lawsuit against Conley and Swierkosz is protected activity under the First Amendment.

### B. Mileham has shown conduct that could be deemed retaliatory.

Mileham has adduced evidence of conduct that could be viewed as "an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Baloga v. Pittston Area School Dist.*, 927 F.3d 742, 758 (3d Cir. 2019). The United States Court of Appeals for the Third Circuit has explained that this is a relatively low bar to establish:

> Whether a public employer's conduct rises to the level of an actionable wrong is "a fact intensive inquiry focusing on the status of the [employee], the status of the retaliator, the relationship between the [employee] and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (emphasis omitted) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). A public employer "adversely affects an employee's First Amendment rights ... when it makes decisions, which relate to ... *transfer* ... based on the exercise of an employee's First Amendment rights." *Id.* (emphasis added) (quoting *Suarez Corp. Indus.*, 202 F.3d at 686).
>
> Although the nature of the retaliatory acts committed by the public employer must "be more than *de minimis*," amounting to more than "criticism, false accusations, or verbal reprimands," *Id.* (citation omitted), the threshold is "very low," *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006). Indeed, we have observed that "an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her" First Amendment right may suffice. *Suppan*, 203 F.3d at 234 (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 n.8, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)).

*Id.*

Considering the record in the light most favorable to Mileham, the Court holds that he has shown that he was charged with a crime and—although, as explained below, the specifics are unclear—suffered an impact to his business operations. These are actions which would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Mileham has met the second prong of a First Amendment retaliation claim.

### C. Mileham has not adduced evidence of causation that could lead a reasonable jury to connect his lawsuit with the alleged retaliatory actions.

Finally, to succeed at the summary judgment stage, Mileham must show causation—he must establish his lawsuit was the substantial and motivating factor in his being charged with disorderly conduct and the interference with his business. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("[I]f there was not a causal relationship then the [Township] could not have engaged in its conduct in retaliation for [Mileham] having engaged in a protected activity."). He is not required to show that the protected activity was the sole, dominant, or primary factor underlying Smith's conduct. *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). After reviewing the record and the parties' arguments, the Court holds that Mileham has not made the requisite showing of causation.

Caselaw offers three avenues to establish causation. First, "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" can establish causation. *Id.* In considering temporal proximity, "[t]here is no bright-line rule for the time that may pass between protected speech and what constitutes actionable retaliation." *Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018). Second, "a pattern of antagonism coupled with timing" may establish a causal link. *DeFlaminis*, 480 F.3d at 267. Finally, the record as a whole may reveal evidence implying causation. *DeFlaminis*, 480 F.3d at 267. In considering these avenues, the Court holds that none weigh in favor of Mileham.

1. <u>Charges against Mileham</u>

Mileham cannot establish causation between his lawsuit and the charges filed against him. There is not an unusually suggestive temporal proximity between the protected activity and the alleged retaliation. Mileham filed his complaint against Swierkosz and Conley on January 23, 2020. Mileham's first interaction with Smith, the incident at Spanky D's, occurred over one year

9

later, on February 3, 2021. Charges were filed against Mileham shortly thereafter. While Mileham believes that the charges arose as a result of the February 3, 2021, incident, and specifically his mention of the lawsuit, there is nothing beyond Mileham's own speculation to connect those dots. Indeed, the evidence of record shows that Smith had sufficient probable cause to file the charges against Mileham unrelated to the lawsuit.

Likewise, Mileham has not demonstrated a pattern of antagonism between he and Smith. The record is bereft of any evidence suggesting antagonism or animosity by Smith toward Mileham in the year between the filing of the lawsuit and the incident at Spanky D's. There is no indication in the record that Smith knew who Mileham was at the time of the incident.

Finally, the record as a whole does not contain evidence supporting a finding of causation between the lawsuit and the charges filed against Mileham. The only reasonable conclusion after reviewing the record as a whole is that the charges were motivated by Mileham's behavior, not the lawsuit. Mileham's retaliation claim as to the criminal charges cannot survive summary judgment.

2. Interference with Mileham's business

Mileham's claim that Smith interfered with his business requires a different analysis. He claims that his work for the very next day, February 4, 2021, was shut down by Smith following the February 3, 2021, Spanky D's incident. In support, Mileham points to a single text message from his contact on his hauling job, Bill, saying that "I was told Rochester board member received a call from chief of police at bridge water [sic] who requested no more dumping at Sharon Road." (ECF No. 88-13). Mileham alleges that there was a stop order issued that permanently stopped his hauling activities. The Court must address whether the text message is enough for Mileham to survive summary judgment.

To withstand a motion for summary judgment under Federal Rule of Civil Procedure 56, "a plaintiff ... must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Although the Court must view all facts in the light most favorable to Mileham and draw all reasonable inference in his favor, Mileham cannot "rest upon the mere allegations or denials of his pleadings." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014) (quoting *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)). Nor will "[b]are assertions, conclusory allegations, or suspicions" suffice. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E.*, 765 F.3d at 269). Instead, Mileham "must set forth specific facts" establishing a triable issue. *Id.* at 288 (quotation omitted). A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "material" if its adjudication bears on an essential element of the plaintiff's claim. *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (citation omitted). The Third Circuit has instructed that:

> To raise a genuine issue of material fact ... the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *see also NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) (same). "The judge's inquiry, therefore, unavoidably asks ... 'whether there is [evidence] upon which a jury can properly

proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Anderson*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party – Mileham. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)). Mileham may not rely merely on "vague statements" to defeat summary judgment. *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quotation omitted). The Court may consider any material in the record that would be admissible at trial. *See* Fed. R. Civ. P. 56(c); *Pamintuan v. Nanticoke Memorial Hosp.*, 192 F.3d 378, 387–88 (3d Cir. 1999). And "although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

Here, the only concrete evidence offered by Mileham is an unsubstantiated text message offered without any corroboration or context – a mere "scintilla of evidence," which is insufficient to defeat Smith's motion for summary judgment. *See Anderson*, 477 U.S. at 252. During a telephone conversation on February 3, 2021, Mileham claims he was informed by Bill that the job to haul dirt to the dump site was not running the following day. Bill was an employee of Global Heavy. Mileham admits that on the date of this phone call, the dump site was getting "full." Mileham testified that the next day, on February 4, 2021, he called Bill to ask why the job was being shut down. He asked Bill to put the specifics of this conversation in writing via text message

(ECF No. 88, pp. 4-5); (ECF No. 101, pp. 4-5).  As stated above, the text message from Bill to Mileham on February 4, 2021, states,

> I was told a Rochester board member received a call from chief of police at bridge water [sic] who requested no more dumping on Sharon Road.

(ECF No. 88-13).  Mileham admits that he did not contact anyone connected with Bridgewater Borough about what he believed was a job shut down.  (ECF No. 101, p. 5).

As written, this text does not constitute a stop work order.  Nor does it give any context as to the actual or stated reason that there was, allegedly, to be no more dumping on Sharon Road.  Mileham has not provided evidence as to context, and no deposition testimony of Bill is part of the record before the Court.  Nor is there any evidence as to the identity of the "Rochester board member."  To warrant meaningful consideration, it was incumbent on Mileham to provide far more context to the text message.  The message is not significantly probative in that it does not refute Smith's uncontradicted evidence (*See* ECF Nos. 88-14, 88-15, and 88-16) that no work stoppage order was ever issued.  The text message may show an issue of fact as to what Bill thinks the chief of police told a Rochester board member, but it does not address the fact that no work stoppage order was issued.  It is of note that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  This is to say that the Court need not adopt a version of the facts asserted by Mileham when they are "utterly discredited by the record [so] that no reasonable jury" could believe them.  *Id.*  Here, the single text message is overwhelmed by other substantiated evidence of record that there was no work stoppage order; a reasonable jury could not return a verdict in favor of Mileham as to Smith violating his First Amendment rights by issuing a stop work order or otherwise interfering with his business.

There is also a substantial likelihood that the text message from Bill would not be admissible at trial. It is hearsay. Nothing in the record would support a finding that it falls under one of the hearsay exceptions. Mileham's failure to identify Bill, to secure his testimony, or otherwise provide corroboration of the statement in the text message makes it unlikely that Mileham could independently adduce evidence at a trial in concert with the representation in the text message.

As a final matter, even if the lone text message was admissible at trial and sufficient to demonstrate that Smith directed a stoppage in Mileham's work, it is completely insufficient to connect the business interference to Mileham's filing of the lawsuit against Conley and Swierkosz—rather than his own behavior during the incident outside of Spanky D's. Mileham speculates that Smith reacted to his statement that he had a pending lawsuit (among many statements that Mileham made during the encounter) by interfering with his hauling business. But there is no evidence to support that speculation. An equally reasonable speculation would be that Smith reacted to Mileham's profanity laden tirade against him.

Mileham cannot survive summary judgment by offering only speculation. He had to provide evidence that would allow a reasonable jury to find that Smith's alleged retaliatory conduct was a result of Mileham's lawsuit. Mileham failed to do so, and he cannot survive summary judgment.

## IV. CONCLUSION

For the reasons set forth above, Smith's motion (ECF No. 86) will be granted. Summary judgment will be entered in favor of Smith as to Mileham's claim against him for First Amendment retaliation. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11-20-2023
Date