Case 2:20-cv-00116-WSS   Document 109   Filed 11/20/23   Page 1 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID MILEHAM,<br><br>    *Plaintiff,*<br><br>v.<br><br>JEREMY CONLEY, *an individual,* and<br>NATHAN SWIERKOSZ, *an individual,* and<br>PAUL SMITH, *an individual,*<br><br>    *Defendants.* | Civil Action No. 2:20-cv-116<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiff David Mileham ("Mileham") brought an action against Defendants Jeremy Conley ("Conley") and Nathan Swierkosz ("Swierkosz") (collectively, "Defendants"), both officers of the Bridgewater Police Department, asserting a Fourth Amendment excessive force claim under 42 U.S.C. § 1983 and state law claims of assault and battery. (ECF No. 37). Defendants moved for summary judgment, arguing that they are shielded by qualified immunity and, alternatively, that Mileham failed to demonstrate that they violated the Fourth Amendment and/or committed an assault and battery. (ECF No. 89). The Court is required to view the claims against Defendants in light of their own individual conduct. For the reasons set forth below, the Court will grant summary judgment in favor of Swierkosz. Because the Court holds that Conley is not protected by qualified immunity and that genuine issues of material fact exist

1

as to whether he violated the Fourth Amendment and/or committed state law torts, summary judgment is not appropriate. The case against Conley will proceed to trial.[1]

## I. STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## II. FACTUAL BACKGROUND

Almost everything relating to the encounter between Defendants and Mileham is vehemently disputed. In other words, the parties present very few material facts that are undisputed. The Court will address the areas of agreement between the parties as well as those in dispute.

The parties agree that Defendants first encountered Mileham in a parking lot adjacent to the Bridgewater Landing Marina (the "Marina"). (ECF No. 91, ¶¶ 3–4); (ECF No. 98, ¶¶ 3–4).

---

[1] This Memorandum Opinion is limited to the motion filed by Conley and Swierkosz. Defendant Paul Smith's Motion for Summary Judgment (ECF No. 86) will be addressed in a separate opinion.

It is not disputed that—notwithstanding different backstories—Mileham introduced himself to Defendants as "Crazy Dave." (ECF No. 91, ¶ 5); (ECF No. 98, ¶¶ 5, 51). Defendants assert that Mileham showed signs of intoxication, but Mileham contends that he consumed only one drink hours before the encounter. (ECF No. 91, ¶ 6); (ECF No. 98, ¶¶ 6, 42). Although the parties dispute when he acquired it (with respect to their encounter), it is undisputed that Mileham had a "propane torch" or "Bunsen burner" in his possession. (ECF No. 91, ¶ 8); (ECF No. 98, ¶¶ 8, 46). There is also no dispute that Mileham did not provide his last name when asked. (ECF No. 91, ¶ 9; ECF No. 98, ¶¶ 9, 52). At this point, Defendants recall that Conley informed Mileham that he was under arrest. (ECF No. 91, ¶ 10). Mileham counters that he was never informed that he was under arrest. (ECF No. 98, ¶¶ 10, 55).

The next stage of the interaction between the parties occurred on a boat docked at the Marina, but the parties disagree about almost every detail. (ECF No. 91, ¶ 11); (ECF No. 98, ¶ 11). Defendants contend that Mileham fled from them onto a boat, refused to disembark when commanded, and threatened to blow it up if they boarded. (ECF No. 91, ¶¶ 10–12). They also claim that they heard a female, later identified as Michelle Haley Ochsenhirt, on the boat. (*Id.* ¶ 13). Mileham provides a different version of events, countering that Defendants did not pursue him onto the boat nor order him to leave the boat. (ECF No. 98, ¶¶ 11, 56). He also denies threatening to light the boat on fire or blow it up. (*Id.* ¶ 12). Rather, Mileham claims that Defendants boarded the boat and entered its cabin without warning. (*Id.* ¶¶ 14, 57).

Defendants contend that a fight ensued between Conley and Mileham shortly after they boarded the boat. (ECF No. 91, ¶¶ 14–16). They recount that Swierkosz attempted to use his taser on Mileham but that it failed to discharge because only one prong made contact with Mileham's body. (*Id.* ¶ 16). Mileham denies that he fought Conley but agrees that one of

Defendants deployed their taser. (ECF No. 98, ¶ 16). He does not deny Defendants' contention that only one prong made contact and that it was, therefore, ineffective. (*Id.* ¶ 16–17). There is no dispute that Defendants ultimately handcuffed Mileham and seated him at the back of the boat. (ECF No. 91, ¶¶ 17–18); (ECF No. 98, ¶¶ 17–18, 62–63).

The period after Mileham was handcuffed is also greatly contested. Defendants state that Mileham screamed at the officers that he would not leave the boat, that he suddenly arose and hit Swierkosz with his shoulder or elbow, and nearly forced Swierkosz into the Beaver River. (ECF No. 91, ¶¶ 19, 21). According to Defendants, Conley responded by tackling Mileham, who kicked back and threatened to throw both officers into the river. (*Id.* ¶¶ 22, 23). Defendants contend that they picked Mileham up and carried him onto the dock, where he then resumed resisting arrest and attempted to roll into the river. (*Id.* ¶¶ 24–25).

Mileham admits that he refused to leave the boat in handcuffs without donning a life jacket but alleges that Conley, in response to Mileham's objections, punched him in the head. (ECF No. 98, ¶¶ 19–20, 67). In his version of events, Conley stepped onto the dock while Swierkosz helped Mileham stand up from his seated, handcuffed position on the boat. (*Id.* ¶¶ 21, 70). Mileham claims that Conley's movement caused the boat to rock, which knocked Swierkosz off balance and almost caused him to fall into the Beaver River. (*Id.*) Then, Mileham asserts that Conley reboarded the boat and punched him. (*Id.* ¶¶ 22, 72). He maintains that Defendants deployed a second taser, which stunned him before the officers dragged him onto the dock by his arms and legs. (*Id.* ¶¶ 22, 24, 72). He denies kicking Defendants and threatening to throw them in the river. (*Id.* ¶ 23).

After moving him from the boat to the dock, Defendants contend that Conley punched Mileham to subdue him. (ECF No. 91, ¶¶ 25–26). Conley called for backup and held Mileham

4

on the dock until additional officers arrived. (*Id.* ¶ 27). Defendants assert that Mileham was belligerent, loud, and continued to resist by dead-weighting himself. (*Id.* ¶ 30). Mileham disputes this, contending that he lost consciousness from Conley repeatedly punching him until backup officers arrived. (ECF No. 98, ¶¶ 25–27). Although Mileham claims he had lost consciousness, he agrees with Defendants that Swierkosz never struck him during the course of the encounter. (ECF No. 91, ¶ 28); (ECF No. 98, ¶ 28).

Defendants recall that Mileham suddenly became compliant when he mistakenly believed that an officer from another jurisdiction arrived. (ECF No. 91, ¶ 31). Mileham admits that he mistook the backup officer for someone else and subsequently complied. (ECF No. 98, ¶ 31). From that point, the parties agree that Mileham was transported to the hospital where he was treated for contusions, and following his release, was transferred to jail. (ECF No. 91, ¶ 35); (ECF No. 98, ¶ 35). Mileham contends that he received additional medical treatment for facial trauma, abrasions, swelling, neck trauma, and back pain. (ECF No. 98, ¶ 79). He states that his head, face, and eyes were so swollen that he could not see for approximately two weeks. (*Id.* ¶ 80).

As a result of this encounter, Mileham was charged with aggravated assault, terroristic threats, recklessly endangering another person, resisting arrest, disorderly conduct, and public drunkenness. (ECF No. 91-3, pp. 2–4). He ultimately pled guilty to disorderly conduct. (ECF No. 91-6, p. 2).

### III. ANALYSIS

A defendant is only responsible for his own conduct under § 1983. In order to decide whether summary judgment is appropriate, the Court must separately examine Mileham's claims against Conley and Swierkosz based on their individual actions. *See Peroza-Benitez v. Smith*,

994 F.3d 157, 165 (3d Cir. 2021) (citation omitted).  The Court also must separately determine whether there is a genuine issue of material fact as to either of their conduct with respect to Mileham's Fourth Amendment claim for unlawful force and whether either officer is entitled to qualified immunity.  Having done so, the Court holds that there are no genuine issues of material fact about whether Swierkosz's conduct violated the Fourth Amendment.  The Court will grant summary judgment in favor of Swierkosz on Mileham's § 1983 claims.  On the other hand, there are genuine issues of fact as to whether Conley's conduct was objectively unreasonable and, therefore, violated the Fourth Amendment.  Mileham's § 1983 claims against Conley will proceed to trial.  The Court reaches the same conclusion with respect to Mileham's state law claims against each officer.

### A. Summary judgment is warranted on Mileham's § 1983 claim against Swierkosz but not Conley.

In moving for summary judgment as to Mileham's § 1983 claims, Defendants assert that they are entitled to qualified immunity because they used reasonable force under the circumstances.  (ECF No. 90, pp. 5–12).  Qualified immunity shields government officials, including police officers, from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).  To determine whether qualified immunity applies, the Court must conduct a two-part inquiry, considering (1) whether Conley and/or Swierkosz violated a constitutional right and (2) whether that right was clearly established.  *See El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (affording courts discretion to decide which step of the qualified immunity analysis to address first).  Defendants have the burden of establishing their entitlement to qualified

6

immunity. *See Peroza-Benitez*, 994 F.3d at 165. Taking the facts in a light most favorable to Mileham, the non-moving party, the Court holds that a reasonable jury could find that Conley, but not Swierkosz, violated Mileham's Fourth Amendment right to be free from excessive force and that such a right was clearly established at the time of the incident. Accordingly, Swierkosz is protected by qualified immunity, but Conley is not. Thus, summary judgment will be granted in favor of Swierkosz and denied as to Conley.

> 1. <u>A reasonable jury could find that Conley, but not Swierkosz, violated Mileham's Fourth Amendment right to be free from excessive force.</u>

The first step of the qualified immunity analysis asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Mileham asserts that Defendants used excessive force in violation of the Fourth Amendment, as applied to the states by the Fourteenth Amendment.[2] (*See* ECF No. 97, pp. 3–7). Excessive force claims under the Fourth Amendment require proof that "a seizure occurred and that it was unreasonable under the circumstances." *El*, 975 F.3d at 336 (citation omitted); *see also Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)). There is no question that a seizure occurred here. Defendants seized Mileham within the meaning of the Fourth Amendment not only when they arrested him but also when Swierkosz attempted to use a

---

[2] Mileham brings this claim under § 1983, which provides a cause of action "for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citation omitted). To obtain relief under § 1983, a plaintiff must show that he suffered "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). There is no dispute that Defendants acted under color of state law. The Court's analysis focuses on the former showing—the violation of a constitutional right—which dovetails with the first step of the qualified immunity inquiry.

taser on him and when Conley otherwise forced him to the ground and subdued him. These actions unquestionably constituted an "application of physical force to the body of a person with intent to restrain." *Torres v. Madrid*, 141 S. Ct. 989, 994 (2021). However, Defendants maintain that the force employed against Mileham was reasonable due to the circumstances of their interaction with him. (ECF No. 90, p. 12).

A challenged use of force is "evaluated for objective reasonableness based upon the information the officer[] had when the conduct occurred." *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017) (quoting *Saucier*, 533 U.S. at 207); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). In determining the objective reasonableness of a particular use of force, courts may consider several factors, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the officer or public safety; (3) whether the suspect is actively resisting or attempting to evade arrest; (4) physical injury to the suspect; (5) whether the suspect is violent or dangerous; (6) the duration of the use of force; (7) whether the use of force takes place in the context of effecting an arrest; (8) the possibility that the suspect may be armed; and (9) the number of people with whom the officers must contend at one time. *Graham*, 490 U.S. at 396 (setting forth factors one through three); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209–11 (3d Cir. 2007) (setting forth factors four through nine); *see also El*, 975 F.3d at 336. Considering those factors and viewing the facts in the light most favorable to Mileham—as the Court must—a jury could conclude that Conley's conduct was objectively unreasonable. But the Court holds that a reasonable jury could not so find as to Swierkosz.

*i.*     *Swierkosz*

As explained above, an officer's use of force is reviewed for its objective reasonableness under the circumstances. The focus of this analysis is the force used and the circumstances in which it was employed. In examining whether Swierkosz is protected by qualified immunity, the Court is required to consider what force he is accused of using. As explained above, the record in this case, when viewed in a light most favorable to Mileham, cannot support a finding that Swierkosz is responsible for much, if any, of the harm that Mileham asserts. Mileham admits that Swierkosz never struck him during the parties' entire encounter. (ECF No. 98, ¶ 28). The only conduct of Swierkosz that could be viewed as a use of force against Mileham is: (1) his attempt to use the taser on Mileham; and (2) carrying or dragging (of which the specifics are in dispute) Mileham from the boat to the shore. The Court holds that neither act could be deemed unreasonable when viewed objectively.

First, as to the deployment of the taser, it is important to note that it is not disputed that Swierkosz deployed his taser against Mileham. (ECF No. 91, ¶ 16); (ECF No. 98, ¶ 16). Swierkosz states that the taser was ineffective because only one of the probes contacted Mileham's body, preventing it from discharging an electrical output. (ECF No. 91, ¶ 16). Mileham's denial as to this point is, at best, ambiguous. (*See* ECF No. 98, ¶ 16). He does not specifically admit that the taser failed to subdue him. (*See id.*). Nor does he clearly deny the claim that he was not shocked by the taser. (*See id.*). It does not matter. The Court holds that even if Swierkosz's taser had successfully deployed, its use was not objectively unreasonable in the circumstances of Mileham's lawful arrest.

Numerous federal appellate courts, including the United States Court of Appeals for the Third Circuit, "ha[ve] approved [] the use of taser guns to subdue individuals who resist arrest or

refuse to comply with police orders." *Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012) (affirming a district court's grant of qualified immunity to a police officer who tased a 73-year-old man who refused to give the officer his car keys); *Grab v. Columbia Borough*, No. 20-1815, 2022 WL 103350, at *7 (E.D. Pa. Jan. 10, 2022) (citing *Estep v. Mackey*, No. 3:11-207, 2016 WL 1273249, at *2, *6 (W.D. Pa. Mar. 31, 2016) ("*Estep II*") (granting qualified immunity on remand to the police officer who deployed a taser when plaintiff attempted to run away while being escorted to police station)); *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 393–95 (E.D. Pa. 2010) (citing *Wargo v. Municipality of Monroeville*, 646 F. Supp. 2d 777, 786 (W.D. Pa. 2009) ("Even if a plaintiff is not armed, it is reasonable for law enforcement officers to employ multiple rounds of non-lethal force if necessary to effectuate an arrest.")); *Gruver v. Borough of Carlisle*, No. 4:CV 05-1206, 2006 WL 1410816, at *3, *5 (M.D. Pa. May 19, 2006) (holding that police officers attempting to restrain unarmed plaintiff who appeared to be intoxicated or in distress did not use excessive force when, in order to protect plaintiff, themselves, and others, they deployed a taser three times). The Court holds that upon consideration of the circumstances in this case, Swierkosz's deployment of his taser was not objectively unreasonable.

The Court likewise holds that the only other conduct specifically attributed to Swierkosz—removing Mileham from the boat—is not objectively unreasonable in this context. Here, again, there is some degree of dispute as to the language used to describe what happened, i.e., "carry" versus "drag." (*See* ECF No. 91, ¶ 24); (ECF No. 98, ¶ 24). But Mileham has not alleged, and the record does not support, any contention that the officers used any unusual degree of force or violence in removing Mileham from the boat—particularly where the record is undisputed that Mileham refused to leave the boat without donning a lifejacket. (ECF No. 91, ¶

19); (ECF No. 98, ¶¶ 19, 69). It is well-established that officers are permitted to move a suspect in effectuating a lawful arrest—especially to a more safe or controlled location.

It is also well-established that police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of this force is dictated by the suspect's behavior. Here, Mileham himself was an obstacle preventing the police from performing an official function (arresting him) by refusing to comply and leave the boat. (*See* ECF No. 91, ¶ 19); (ECF No. 98, ¶¶ 19, 69). "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (quoting *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)).

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, … however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (quotation, citation, and alteration omitted); *see also Tennessee v. Garner*, 471 U.S. 1, at 8–9 (1985) ("[T]he question [is] whether the totality of the circumstances justifie[s] a particular sort of … seizure").

The Court holds that no reasonable jury could find that Swierkosz engaged in an unlawful use of force by involuntarily removing Mileham from the boat in the course of the lawful arrest. Even if, as Mileham characterizes it, the officers "dragged" him from the boat, there is no indication in the record or in Mileham's Complaint or Counter Statement of Material Facts that the alleged dragging was executed with an unusual level of force or violence. Further, Mileham fails to associate the allegedly severe physical injuries he suffered with his forcible extraction from the boat. (*See* ECF No. 98, ¶¶ 35, 79–80).

Mileham admits, however, that he refused Defendants' request to leave the boat voluntarily. (ECF No. 98, ¶ 23). There is no question that a boat is a less-than-ideal location for police to effectuate an arrest and that the shore is a safer location for all involved. Indeed, in denying that he attempted to push Swierkosz into the river, Mileham alleges that Conley's movement made the boat rock to the extent that Swierkosz lost his balance and nearly fell into the river. Under the circumstances, Defendants were objectively justified in using force to remove the admittedly resisting Mileham from the boat.

Because the Court holds that the only two allegations of force against Swierkosz were not objectively unreasonable in the circumstances, the Court holds that he is protected by qualified immunity.

*ii.    Conley*

Mileham asserts that Conley's conduct is far more extensive than that of Swierkosz. (*See* ECF No. 98, ¶¶ 16, 19, 22, 25–27, 67, 72). Most of the allegations about the nature and extent of force used by Conley are sharply disputed between the parties. Mileham claims that Conley grabbed him, threw him face down on the floor of the boat, and handcuffed him. (ECF No. 98, ¶ 16). Conley, however, claims that Mileham was actively fighting him, although Mileham disagrees with this. (ECF No. 91, ¶¶ 16–17); (ECF No. 98, ¶ 17). Mileham also claims that Conley, who had disembarked, reboarded the boat, approached him, and punched him in the face twice, knocking him to the floor of the boat. (ECF No. 98, ¶ 22). Conley admits that he "tackled" Mileham but did so in response to Mileham's attempt to cast Swierkosz overboard. (ECF No. 91, ¶ 22). Next, Conley contends that he and Swierkosz carried Mileham off the boat, which Mileham characterizes as "dragging." (ECF No. 91, ¶ 24); (ECF No. 98, ¶ 24). Once off the boat, Mileham claims that Conley rolled him onto his back, placed his foot on Mileham's

chest, and punched him four or five times until he lost consciousness. (ECF No. 98, ¶ 25). Conley admits that he punched Mileham but states that he was trying to subdue a still-resisting Mileham. (ECF No. 91, ¶¶ 25–26).

There is no question that the factual accounts proffered by Mileham and Conley are irreconcilable. In determining whether Conley's conduct was objectively unreasonable in the context of the Fourth Amendment, the Court must examine the record in a light most favorable to Mileham. The Court will do so and examine whether the conduct Mileham alleges was objectively unreasonable in the circumstances using the eight-part inquiry discussed above.

As to the first prong, the severity of the crime at issue, while Mileham was charged with several crimes—including serious offenses—he ultimately pled guilty to disorderly conduct, which is not viewed as a particularly violent or serious offense. *See Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (concluding that the "crime[] of disorderly conduct" is not "particularly severe"). Moreover, "even if an individual is engaged in disorderly conduct, there still could be a level of responsive force that is … 'excessive and unreasonable.'" *El*, 975 F.3d at 339 (citation omitted). Viewing the undisputed facts as a whole, the Court holds that this factor weighs in favor of Mileham. He was not suspected of any independent crime at the time of his encounter with Defendants and was ultimately convicted (upon his guilty plea) of a minor crime.

With respect to the second factor, the Court holds that there is a genuine dispute as to whether Mileham posed an immediate threat to the officers and/or public safety at the time Conley struck him and otherwise used force against him. As explained above, the parties profoundly disagree about nearly every aspect of their encounter, from whether Mileham was drunk to whether he was using or attempting to use force against Defendants or otherwise

evading arrest. This genuine dispute must be resolved by a jury. It is possible that a jury could reasonably determine that Mileham did not pose an immediate threat to the officers and/or public safety. As such, this factor also weighs in Mileham's favor.

The Court will address factors three, five, six, and seven collectively. The critical facts associated with these factors are all in dispute. While there is no question that Defendants ultimately decided to place Mileham under arrest, when that happened within the timeline of their interaction is disputed. So too is the nature of Mileham's resistance. He admits that he refused to disembark from the boat without donning a life jacket. (ECF No. 98, ¶ 23). Otherwise, Mileham denies actively resisting or behaving violently throughout his encounter with Conley. Defendants offer a more robust narrative of resistance. They contend that he was obstructive, volatile, disobedient, and took active physical efforts to evade arrest and, indeed, violently assault both officers. Thus, the critical facts that undergird a determination on factors three, five, six, and seven must be resolved by a jury. It is possible that a jury could make factual findings favorable to Mileham as to each of these factors.

The fourth factor, the nature of Mileham's injuries, also weighs in favor of Mileham. He alleges that Defendants beat him so severely that he lost consciousness. (ECF No. 98, ¶¶ 25, 75). He contends that he received serious injuries to his face that caused substantial swelling to the extent that he could not see for nearly two weeks. (*Id.* ¶ 80). A reasonable jury could determine that these injuries were disproportionate to Mileham's conduct under the circumstances alleged.

The final two factors—the possibility that Mileham was armed and the number of persons the officers had to contend with—weigh in favor of Mileham. Although Defendants contend that he had a torch at the beginning of their encounter, they adduce no facts showing that they held a reasonable belief that Mileham was armed. Likewise, despite the presence of a

female companion on the boat, the facts show that Mileham, alone, was engaging with the officers. Defendants did not have to deal with Mileham simultaneously with other suspects. Weighing all of these factors together, and upon consideration of the totality of the circumstances, the Court holds that a jury could determine that Conley's use of force was objectively unreasonable. Accordingly, a jury could find that Conley violated Mileham's Fourth Amendment right to be free from excessive force. A jury will have to sort through the parties' conflicting accounts of what happened and determine whether Conley did, in fact, use objectively unreasonable force in the context of the encounter with Mileham.

> 2. The constitutional right was clearly established at the time of Conley's use of force.

The second step of the qualified immunity inquiry asks whether "the [constitutional] right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). To answer that question, the Court must first "define the right allegedly violated at the appropriate level of specificity." *Peroza-Benitez*, 994 F.3d at 165 (citation omitted); *see also El*, 975 F.3d at 338 ("[T]he right must be defined with specificity."). The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (stating that the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition") (internal quotation omitted). This is "especially important in the Fourth Amendment context." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citation omitted). Thus, the "general proposition" established by *Graham*—i.e., that "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness"—is not "particularized" enough. *Saucier*, 533 U.S. at 201–02; *see also Ashcroft*, 563 U.S. at 742.

15

The specific Fourth Amendment right at issue in this case is the right of an unarmed individual who is not resisting arrest to be free from being beaten by an arresting officer. Again, as explained above, the Court recognizes that the facts are sharply in dispute as to whether Mileham was resisting, but it must read the conflicting factual accounts in a light most favorable to Mileham. *See Giles v. Kearney,* 571 F.3d 318, 326 (3d Cir. 2009); *see also Curley*, 298 F.3d at 278 (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis"). The Court must deny summary judgment if, based on Mileham's version of the facts, Conley violated Mileham's clearly established constitutional rights. *Giles*, 571 F.3d at 327 (finding that the district court was wrong to dismiss plaintiff's Eighth Amendment claims on qualified immunity grounds because there was a factual dispute as to whether plaintiff had ceased resisting when he was kicked by officers, and the court "must accept [the plaintiff's] version of the facts").

The Court holds that the "clearly established" prong has been satisfied. *See Saucier*, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). At the time of Conley's encounter with Mileham, the law was clear that beating an unarmed suspect who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force. *See, e.g., Giles*, 571 F.3d at 326 ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) ("It was clearly established in 2009 that when a person is subdued and restrained with handcuffs, a gratuitous and completely unnecessary act of violence is

unreasonable and violates the Fourth Amendment.") (internal quotation omitted); *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 404 (6th Cir. 2009) ("This Court has consistently held in light of the reasonableness standard that 'use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.'") (quoting *Baker v. City of Hamilton*, 471 F.3d 601, 607–08 (6th Cir. 2006)); *Jennings v. Jones*, 499 F.3d 2, 16–17 (1st Cir. 2007) (holding that a reasonable officer should have known that it was unconstitutional to increase the use of physical force after an arrestee who has been resisting arrest stops resisting and warns officers that they are hurting him).

Because the Court has held that there is a genuine issue of material fact as to whether Conley used objectively unreasonable force against Mileham, subjecting him to an unlawful seizure in violation of the Fourth Amendment, and because the Court holds that Mileham's rights were clearly established at the time of the alleged conduct, the Court denies Conley the protection of qualified immunity. The claim against him under § 1983 will proceed to trial.

### B. SUMMARY JUDGMENT IS WARRANTED AS TO MILEHAM'S STATE LAW CLAIMS AGAINST SWIERKOSZ BUT NOT CONLEY.

In addition to his Fourth Amendment claims, Mileham asserted state law claims against Conley and Swierkosz for assault and battery. (ECF No. 37, ¶¶ 62–66). Under Pennsylvania law, "an assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal quotation omitted). An officer is permitted to use an amount of force reasonable under the circumstances to effectuate a lawful arrest. "The reasonableness of the force … determines whether the police officer's conduct constitutes an assault and battery." *Russoli v.*

*Salisbury Township*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000) (internal quotation marks and citation omitted).

The Court resolves Defendants' motion on the state law claims the same way it did for Mileham's claim under § 1983. The determination turns on whether Defendants' conduct was objectively reasonable under the circumstances. As explained above, no reasonable jury could find that the conduct alleged against Swierkosz was objectively unreasonable. On the other hand, there are a number of issues of material fact with respect to Conley's conduct. As such, summary judgment on Mileham's state law claims will be granted as to Swierkosz but denied as to Conley.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 89) will be granted as to all claims against Swierkosz and denied as to all claims against Conley. The claims against Conley will proceed to trial. Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11-20-2023
Date